*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KYLE EDWARD ARQUETTE,

Plaintiff-Appellant,

v

KATHRINE JOANNE CARR,

Defendant-Appellee.

UNPUBLISHED
November 26, 2024
10:38 AM

No. 370691
Iosco Circuit Court
Family Division
LC No. 23-003755-DC

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

In this child-custody dispute, plaintiff appeals by right the trial court's order awarding defendant primary physical custody of the parties' minor child, granting defendant's motion to change the child's domicile, and establishing a parenting-time schedule.[1]  We affirm.

## I. BACKGROUND

The parties are the biological parents of AJC, who was born in January 2015.  The parties briefly dated, but they ended their relationship shortly after defendant became pregnant with AJC.  Shortly thereafter, defendant moved from Michigan to Florida, where AJC was born.  Following AJC's birth, the parties signed an affidavit of parentage (AOP) indicating that plaintiff was AJC's biological father.  Approximately seven months after AJC was born, defendant returned to Michigan with AJC to care for defendant's ailing mother and, pursuant to plaintiff's request, explore the possibility of rekindling their relationship.  The parties ultimately decided to remain apart, and defendant maintained custody of AJC.  After a few years had passed, however, the parties were able to make arrangements without judicial involvement for plaintiff to visit AJC.  Although plaintiff exercised few to no overnights with AJC during the first few years of her life,

---

[1] The order also referred the parties to the Friend of the Court for further investigation to establish child support.  Neither party challenges the award of child support on appeal.

-1-

he slowly increased his overnights as the years passed and, by 2023, he exercised overnights every weekend, every holiday, and every other week during the summer.

In June 2023, defendant received a job offer in Florida near her family and informed plaintiff that she intended to accept the offer and move to Florida with AJC sometime that year. Defendant provided plaintiff with a proposed parenting-time schedule that would alter the structure of plaintiff's parenting time but provide him with slightly more parenting time overall than he had under the parties' existing arrangement. Defendant also offered to cover all transportation costs associated with getting AJC to and from Florida for plaintiff's parenting time. Plaintiff repeatedly refused defendant's proposals and eventually, in July 2023, filed a motion seeking joint legal custody, primary physical custody,[2] an established parenting-time schedule, and child support.

Within a month, defendant filed a counter-complaint seeking joint legal custody, primary physical custody, an established parenting-time schedule, child support, and permission to move to Florida with AJC,[3] which plaintiff opposed. The parties agreed that there was no current court order governing custody, parenting time, or child support and that the issues raised by both parties were "very intertwined" because they all ultimately stemmed from defendant's proposed move to Florida with AJC. Defendant argued that the change-of-residence factors set forth in MCL 722.31(4) favored her proposed relocation, AJC had an established custodial environment only with her, and the move would not change AJC's established custodial environment. Plaintiff argued that defendant could not show by a preponderance of the evidence that her requested move satisfied the change-of-domicile factors, AJC had an established custodial environment with both parties, the move would alter AJC's established custodial environment, and defendant could not show by clear and convincing evidence that the move was in AJC's best interests.

The trial court conducted an evidentiary hearing in March 2024 to address all of the issues raised, at which both parties testified, presented additional witnesses, and presented documentary evidence.[4] Shortly after the hearing, the trial court issued a written opinion detailing its findings of fact and its conclusions regarding custody, parenting time, child support, and defendant's motion to change domicile. The trial court found that although plaintiff had "absented himself" from AJC's life when she was approximately nine months old, plaintiff and AJC had bonded during recent years, and an established custodial environment existed with both parents. The trial court noted, however, that the evidence clearly established that defendant had "had a primary role in physically caring for and raising the child" and that plaintiff had "exercised more of a free time role," and it reviewed the best-interests factors set forth in MCL 722.23 under the preponderance-of-the-evidence standard because defendant's proposed custody arrangement and move to Florida with AJC would not change these established custodial environments. After considering the best-

---

[2] Plaintiff initially sought sole legal and physical custody of AJC but later acknowledged that he and defendant agreed that they should have joint legal and physical custody of AJC.

[3] Defendant later filed a separate motion to change domicile at the trial court's direction.

[4] Prior to the evidentiary hearing, the trial court noted on the record that it had to make an initial custody determination before determining whether to grant defendant's motion to change domicile but that, given the relatedness of the issues, it believed that conducting a single evidentiary hearing regarding both matters was the most efficient course of action.

interests factors, the trial court concluded that defendant had sufficiently established that defendant's primary physical custody of AJC was in AJC's best interests. The court then considered the change-of-residence factors set forth in MCL 722.31(4) and found that the factors supported defendant's motion to change domicile. Because it also found that the move to Florida would not alter AJC's established custodial environment with either parent, the court granted defendant's motion. Approximately two weeks later, the court issued an order that awarded joint legal custody to both parties but primary physical custody to defendant, established a parenting-time schedule that provided plaintiff "at least 93 overnights per year" and was in accordance with "the 23rd Circuit Friend of the Court Guidelines," and granted defendant's motion to change domicile. This appeal followed.

## II. STANDARDS OF REVIEW

"In child-custody disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011), quoting MCL 722.28. This Court applies "three standards of review in custody cases." *Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2022) (quotation marks and citation omitted). The trial court's factual findings are reviewed under the great-weight-of-the-evidence standard. *Id*. "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Id*. (quotation marks and citation omitted). "Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. (quotation marks and citation omitted). Discretionary rulings, including decisions regarding custody or a change of domicile, are reviewed for an abuse of discretion. *Id*.; *Moote v Moote*, 329 Mich App 474, 477; 942 NW2d 660 (2019). "In child-custody cases specifically, an abuse of discretion retains the historic standard under which the trial court's decision must be palpably and grossly violative of fact and logic." *Kuebler v Kuebler*, ___ Mich App ___, ___; ___NW3d ___ (2023) (Docket No. 362488); slip op at 7 (quotation marks and citation omitted). Reviewing courts should defer to the trial court's superior ability to weigh evidence, assess credibility, and otherwise evaluate a child's best interests. *Sabatine v Sabatine*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165279); slip op at 5-6 (quotation marks and citation omitted). "[U]pon a finding of error, appellate courts should remand to the trial court unless the error was harmless." *Fletcher v Fletcher*, 447 Mich 871, 882; 526 NW2d 889 (1994).

## III. APPROPRIATE EVIDENTIARY STANDARDS

Plaintiff argues that the trial court committed clear legal error by failing to apply the clear-and-convincing-evidence standard when making its custody and change-of-domicile determinations. According to plaintiff, because the trial court found that an established custodial environment existed with both parties, the court was required, as part of its custody and change-

of-domicile determinations, to consider the best-interests factors set forth in MCL 722.23 under this evidentiary standard.[5]  We disagree.

In making a custody determination, whether a proposed custody arrangement would alter an established custodial environment dictates whether a trial court applies a clear-and-convincing-evidence standard or a preponderance-of-the-evidence standard to its analysis of the best-interests factors.  As our Supreme Court has explained:

> When considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child.  In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling.  If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests.  Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case.  On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests.  [*Sabatine*, ___ Mich at ___; slip op at 7 (quotation mark and citation omitted).]

Thus, the mere fact that a trial court finds that an established custodial environment exists with both parents does not automatically require the clear-and-convincing-evidence standard.  See *id*.  Rather, before applying this higher evidentiary burden, the court must conclude that the proposed custody arrangement would *alter* one or both of those established custodial environments.  See *id*.

That same basic point holds true under the legal framework that governs a trial court's consideration of a motion for a change of domicile:

> First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) support a motion for a change of domicile.  Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists.  Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment.  Finally, *if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.*  [*Safdar v Aziz*, 342 Mich App 165, 179; 992 NW2d 913 (2022), quoting

---

[5] Plaintiff does not challenge the trial court's finding that an established custodial environment existed with both parents.

*Rains v Rains*, 301 Mich App 313, 325; 836 NW2d 709 (2013) (quotation marks and ellipsis omitted; emphasis added).]

The trial court in this case found that an established custodial environment existed with both parents, with defendant consistently acting as AJC's primary caregiver and plaintiff "exercis[ing] more of a free time role" throughout AJC's life. The court also found that AJC had "clearly relied on [defendant] for the most part, [and] disturbing that primary custodial relationship would likely cause harm to the child." The court further found that awarding primary physical custody to defendant and permitting defendant to move to Florida with AJC "would not change the relationships that the child knows" and thus would not alter the child's established custodial environments. Based on this, the court concluded that the preponderance-of-the-evidence standard governed its analysis of the best-interests factors in its custody determination, see *Sabatine*, ___ Mich at ___; slip op at 7, and did not reach those factors in its change-of-domicile analysis, see *Safdar*, 342 Mich App at 179.

Plaintiff argues that the trial court should not have made its custody and change-of-domicile determinations without analyzing the best-interests factors under a clear-and-convincing-evidence standard. According to plaintiff, this failure amounted to clear legal error because it contravened MCL 722.1006, which is part of the Acknowledgment of Parentage Act, MCL 722.1001 *et seq*. As noted, the parties in this case executed an AOP that identified plaintiff as AJC's biological father. Accordingly, pursuant to MCL 722.1006, defendant, as AJC's mother, "automatically received initial legal and physical custody of" AJC. *Sims v Verbrugge*, 322 Mich App 205, 214; 911 NW2d 233 (2017).[6] MCL 722.1006 further provides that the initial grant of custody to the child's mother is "without prejudice to the determination of either parent's custodial rights" and "shall not, by itself, affect the rights of either parent in a proceeding to seek a court order for custody or parenting time."

Focusing on the phrase "without prejudice," plaintiff argues that his custody claim was inherently prejudiced because defendant had "relegated [plaintiff] to the role of a weekend parent as a function of her sole legal custody" and the trial court "deferr[ed] to the existing 'free time role' [defendant's] choices had relegated [plaintiff] to" when making its determination. In order to render his claim "without prejudice," plaintiff contends, the trial court should have required defendant to meet the clear-and-convincing-evidence standard in her requests for custody and change of domicile. Plaintiff, however, misconstrues the statute and its proper interaction with the trial court's analysis in this case. The purpose of MCL 722.1006, as signaled by the phrase "without prejudice," is to ensure "that the initial grant of custody [under the statute] creates no impediment should either parent wish to seek a judicial determination of custodial rights." *Foster v Wolkowitz*, 486 Mich 356, 366; 785 NW2d 59 (2010). Plaintiff was in no way impeded from seeking a judicial determination of custodial rights at any point and, as evidenced by his motion seeking custody and parenting time, he eventually did, in fact, seek out such a determination. And

---

[6] That grant of initial custody, however, was by operation of law and was not the equivalent of a judicial grant of custody, so no judgment or order regarding custody was issued as a result (or, for that matter, otherwise existed at the time that this case commenced). See *Sims*, 322 Mich App at 211-212.

plaintiff fails to meaningfully explain why MCL 722.1006 should be read to require the court to apply a clear-and-convincing-evidence standard when making that determination, regardless of what the child's caregiving realities at the time may be. A trial court is required to consider a child's relationship with each parent "at the time of [its] custody determination" to determine whether an established custodial environment with one or both parents "exists at the time [it] is rendering its decision." *Sabatine*, ___ Mich at ___; slip op at 10. So the trial court did in this case when assessing the existence of and any impact on AJC's established custodial environments. We do not read MCL 722.1006's "without prejudice" language to be in conflict with this legal principle or to require the trial court to effectively ignore it and the actual circumstances of AJC's caregiving relationships at the time of its determination, as plaintiff seems to suggest.[7]

Plaintiff further contends that the custody arrangement and move to Florida would alter AJC's custodial environment with him because it "would necessarily put an end to the weekly weekend parenting time that [he] had exercised" for the few years preceding it. Given the geographical distance between the parties following the move, this is undoubtedly true, and we do not dispute that plaintiff's parenting-time schedule would necessarily be altered as a result. The touchstone of an established custodial environment, however, is the *relationship* between the parent and child, not simply when or how often a parent exercises his or her parenting time. See *id*. at ___, ___; slip op at 6, 13 (noting that "[a]n established custodial environment depends upon a custodial *relationship* of a significant duration" and that "[a]lthough the 'physical environment' of the child[] is to be considered in determining a child's established custodial environment, it is not the only factor, and it is not alone dispositive") (quotation marks and citation omitted; emphasis added); MCL 722.27(1)(c) (providing, in relevant part, that the "permanency of the *relationship*" between the child and a parent must be considered when determining whether an established custodial environment exists) (emphasis added). Moreover, it is AJC's standpoint as the *child* rather than plaintiff's standpoint as a *parent* that controls the trial court's analysis in this matter. See *Sabatine*, ___ Mich at ___; slip op at 7. See also *id*. at ___ n 6; slip op at 15 n 6 (noting that "the Legislature has decided that the best interests of the child prevail over procedural fairness to the parents") (quotation marks and citation omitted). The trial court abided by these principles in concluding that an award of primary physical custody to defendant and a grant of her motion to change domicile would maintain AJC's existing relationships with each party and not alter the child's established custodial environments. Plaintiff may disagree with that assessment, but he has not shown a reversible error in it or in the trial court's application of it to the legal frameworks governing its custody and change-of-domicile determinations. See *Stoudemire*, 344 Mich App at

---

[7] Nor do we find merit in plaintiff's position to the extent it is premised on the assumption that, but for the AOP, AJC's established custodial environment with him and/or defendant would have been so different that the custody arrangement and move to Florida would amount to a change in such environment(s). As the trial court recognized, plaintiff acknowledged that he had not previously sought any custody or parenting-time order—something the AOP did not prevent him from doing—and he testified that he had not had any issue with the parties' existing caregiving arrangement and only "filed this matter because he and [defendant] could not agree on terms of her moving to Florida and he didn't want her to leave." We see no error in the trial court's assessment in this regard.

42. Accordingly, we do not see merit in plaintiff's claim that the trial court committed clear legal error by not applying the clear-and-convincing-evidence standard as part of those determinations.

## IV. INITIAL CUSTODY AWARD

Plaintiff argues that several of the trial court's best-interests findings were against the great weight of the evidence and did not support its decision to award defendant primary physical custody of AJC. We disagree.

"To determine a child's best interests, the trial court is required to consider the 12 best-interest factors found in MCL 722.23, applying the appropriate standard of proof." *Kuebler*, ___ Mich App at ___; slip op at 17. Plaintiff does not challenge the trial court's findings regarding best-interests factors (a) (love, affection, and other emotional ties), (f) (moral fitness), (g) (mental and physical health), (i) (child's reasonable preference), (k) (domestic violence), or (l) (any other factor relevant to the particular dispute), all of which the trial court found favored the parties equally. See MCL 722.23(a), (f), (g), (i), (k), (l). Plaintiff argues that the trial court's findings under factors (b) (capacity and disposition to give child love, affection, and guidance), (c) (capacity and disposition to provide food, clothing, medical or remedial care, and other material needs), (d) (length of time in a stable, satisfactory environment), (e) (permanence of existing or proposed custodial home or homes), (h) (home, school, and community record), and (j) (willingness and ability to facilitate and encourage relationship between child and other parent) were all against the great weight of the evidence.[8] See MCL 722.23(b)-(e), (h), (j). We will address each challenged factor in turn.

Factor (b) addresses "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). In finding that this factor favored defendant, the trial court noted that only defendant resided in AJC's school district, had "taken care of the bulk of work that goes with that," and "indicated doing the things that [AJC] will need to be successful in school."[9] We do not find that "the evidence clearly preponderates in the opposite direction" of the court's conclusion. See *Stoudemire*, 344 Mich App at 42. Plaintiff argues on appeal that defendant did not involve him in parent-teacher conferences or AJC's homework. Defendant testified, however, that AJC had little to no homework prior to second grade and that, even now that AJC was in second grade, she did not have any homework on weekends when she visited plaintiff. Defendant further testified that plaintiff never asked her whether AJC had homework and that she never did anything to prevent plaintiff from seeking out information about AJC's school, homework assignments, or parent-teacher conferences. Plaintiff testified that he made no effort to do so in the three years that AJC had been in school because he and defendant had "been all right until she wanted to move" and he otherwise trusted her ability to handle AJC's school-related

---

[8] Plaintiff also argues that the trial court's findings under factors (b) and (h) were premised on clear legal error, renewing his argument regarding MCL 722.1006's "without prejudice" language. For the reasons already discussed, we disagree with that line of argument.

[9] There was no dispute during the proceedings that both parties were capable of providing AJC with love, affection, and guidance.

matters. Given the evidence presented, the court's finding that defendant was more apt to provide for AJC's educational needs was not against the great weight of the evidence. See *id*.

Factor (c) addresses "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care," and other necessities, MCL 722.23(c), and the trial court found that this factor favored defendant. The trial court found that both parties were "employed and able to meet [AJC's] needs," noting that plaintiff had "the added income of his spouse" and that defendant had "the added assistance of her family." But the court also found that plaintiff's "testimony of buying clothes and toys [for AJC] didn't seem to be more than gifts" and that defendant had, "at times, been the only one caring for and supporting" AJC. Plaintiff argues on appeal that he "has a substantially higher income" than defendant, thereby putting him in a better financial position to provide for AJC than defendant, who, according to plaintiff, "has never been able to financially or materially support AJC on her own" and "has minimal capacity to provide" for AJC's needs. The focus of the analysis under this factor, however, is the extent to which each party has the "*capacity* and *disposition* to provide for the child[]'s material and medical needs," not "which party earns more money." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008); see also *Corporan v Henton*, 282 Mich App 599, 606-607; 766 NW2d 903 (2009) (explaining that "a parent with more modest economic resources is nonetheless entitled to equal consideration in the child custody context, because if the parties are substantially different as to economic circumstances, the trial court has ample power through its orders, if it be in the best interests of the child or children, to equalize those circumstances") (quotation marks, citation, and alterations omitted).

In making its findings under factor (c), the trial court acknowledged that plaintiff was financially better off than defendant, but it found that, despite this, defendant primarily provided for AJC's material and medical needs. The record supports this finding. Plaintiff testified that he was the co-owner of a trucking company with a flexible schedule and a good income. Plaintiff's wife, with whom he lived, testified that she worked full-time and that she and plaintiff pooled their income to support their household, which included AJC on weekends and plaintiff's four other children from other relationships. Several witnesses, including defendant, testified that defendant maintained stable employment for six years as an assistant store manager, but she had received a job offer in Florida that would substantially increase her income, provide flexible and remote work opportunities, offer additional advancement opportunities in both her education and career, and provide her and AJC with full medical, dental, and vision insurance. Testimony established that although plaintiff occasionally took AJC to dental appointments and urgent care when required, defendant handled nearly all of AJC's medical needs. Testimony also established that although plaintiff more recently began providing AJC with "toys and clothes," defendant, either personally or through the assistance of her family, had provided for nearly all of AJC's material needs throughout her life. Although there was evidence that both parents could provide for AJC's needs, there was also evidence that defendant had actually provided for AJC's material and medical needs for the bulk of AJC's life. The trial court's findings regarding this factor were not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (d) addresses "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity," MCL 722.23(d), and it is "properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments," *Demski v Petlick*, 309 Mich App

404, 448-449; 873 NW2d 596 (2015). In finding that this factor favored the parties equally, the trial court noted that defendant had "moved a few times in the past few years," that plaintiff had "recently had his home burn," and that both parties were renting a home at the time of the hearing. The trial court also noted that plaintiff was "unfaithful" to defendant when AJC was an infant, but "[h]e ha[d] since married and [was] raising his other children with his wife." We disagree with plaintiff that the court's finding regarding this factor was against the great weight of the evidence. Defendant testified that she had moved four times since 2015 but that she had remained in the Tawas area that entire time and, as a result, AJC's schooling remained consistent. Plaintiff testified that he had lived in the same home in Pinconning since 2016, but he, his wife, and his other children had been residing in a rental home since his house burned down in December 2022. Plaintiff testified that he intended to move back into his home after he finished rebuilding it, and defendant testified that she intended to move to Florida and obtain a permanent home there. And, as the trial court recognized, AJC had consistently lived with defendant given that defendant had been her primary—and during many of her formative years, her only—caregiver, whereas plaintiff did not involve himself in AJC's life consistently until the few years preceding the custody hearing, during which AJC spent weekends, holidays, and alternating weeks during summer and school breaks with plaintiff. Beyond the number of defendant's moves, plaintiff raises no real concern regarding the satisfactory nature of AJC's living environment with defendant, and the record reveals no concerns regarding the suitability of that environment or obvious reasons that maintaining continuity would not be desirable in this instance. Indeed, plaintiff testified he took no issue with AJC's living arrangements "until [defendant] wanted to move." Accordingly, the trial court's finding that this factor favored both parties equally was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (e) considers the "permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court found that this factor favored the parties equally because both parties "seem[ed] stable in their housing and [were] able to provide a nurturing space for [AJC]." In making its finding, the court noted that defendant had "been in a few homes, but has been committed to raising [AJC]," that plaintiff "seem[ed] steady in his marriage relationship" and AJC "gets along well with his entire family," and that AJC had a strong bond with both parties. Plaintiff relies on the same argument as he did for factor (d) and argues that defendant had moved several times since 2015 and was therefore unable to provide a permanent custodial home for AJC. The critical consideration under factor (e), however, is the permanence of the custodial or family unit, so the fact that defendant physically moved is not material to this factor. See *Brown v Brown*, 332 Mich App 1, 21; 955 NW2d 515 (2020). In any event, the trial court's finding regarding this factor was not against the great weight of the evidence. Defendant testified that she was not in a relationship. Plaintiff and his wife both testified that they had been married and lived together for several years, they were raising plaintiff's four other children together in their home, and AJC had a good relationship with everybody in the household. Both parties indicated that their own family unit was unlikely to change anytime soon. And, contrary to plaintiff's argument on appeal, nothing in the record suggests that awarding primary physical custody to defendant would have affected AJC's relationships with her siblings or with plaintiff. The trial court's finding under this factor was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (h) addresses "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court focused on AJC's school and home record as there was no real distinction between the parties regarding her community record. The court found that this factor

favored defendant because AJC's "entire school career" had been in Tawas, where she had always lived with defendant, who had always been her primary caregiver. The court acknowledged that defendant's requested change of domicile would disrupt AJC's home, school, and community but noted that awarding primary physical custody to plaintiff "would too" because plaintiff resided in Pinconning and intended to remain there and because plaintiff had never been AJC's primary caregiver. The court also noted that the parties had "never lived close enough for exactly split or shared custody for a school aged child." Plaintiff challenges the trial court's finding on the same grounds that he challenges the court's finding under factor (b), but for the reasons already discussed, those findings were not against the great weight of the evidence. For the same reasons, the trial court's finding under this factor was also not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court found that this factor favored the parties equally, stating, "The parties have worked together to make the long distances work for the child. The parties got along way before needing the help of the Court. I don't see any sign that either party would withhold the child from the other parent." The record supports the trial court's findings under this factor. Both parties testified that they had successfully established and effectuated a consistent parenting-time schedule despite the fact that the parties were no longer in a relationship and lived approximately one hour away from each other. Defendant testified that she always encouraged AJC to have a nurturing relationship with plaintiff because she believed that it was important for AJC to have her father in her life. Defendant also testified that she sent AJC to plaintiff's house for parenting time even when AJC insisted that she did not want to go and that, on one occasion when AJC did not want to go to parenting time, she required AJC to call plaintiff to tell him that. Although plaintiff testified that defendant frequently denied him previously planned parenting time by changing plans "last minute" or refusing to send AJC to his house, defendant denied ever doing so, and we defer to the trial court's superior ability to assess witness credibility. See *Sabatine*, ___ Mich at ___; slip op at 5-6. Defendant also testified that she did not enroll AJC in any weekend extracurricular activities despite AJC's desire to participate in them, because it would interfere with plaintiff's parenting time. Plaintiff also made clear throughout his testimony that he trusted defendant's parenting, had no issues with their custody and parenting-time arrangement until defendant indicated that she wanted to move to Florida with AJC, and only moved to establish custody and parenting time to keep defendant from leaving the state. The record is clear that the parties have the willingness and ability to facilitate a close and continuing parent-child relationship between AJC and the other party, and the trial court's finding regarding this factor was not against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

In sum, the trial court's findings under best-interests factors (b), (c), (d), (e), (h), and (j) were not against the great weight of the evidence. The trial court therefore did not abuse its discretion by awarding primary physical custody of AJC to defendant.

## V. CHANGE OF DOMICILE

Plaintiff argues that some, but not all, of the trial court's findings under the change-of-domicile factors were against the great weight of the evidence and did not support its decision to grant defendant's motion to change domicile. We disagree.

MCL 722.31 governs requests to change a child's legal residence. MCL 722.31(1) identifies the general rule and provides that "a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." As discussed, a trial court's first step when deciding a motion to change domicile is to "determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4) support" the motion. *Safdar*, 342 Mich App at 179. MCL 722.31(4), in turn, sets forth five factors that a trial court must consider:

> (4) Before permitting a legal residence change otherwise restricted by [MCL 722.31(1)], the court shall consider each of the following factors, with the child as the primary focus in the court's deliberations:
>
> (a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.
>
> (b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.
>
> (c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.
>
> (d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.
>
> (e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

Of these factors, plaintiff only challenges the trial court's findings regarding (b) and (c), arguing that the court's findings as to both were against the great weight of the evidence. We will address each factor in turn.

Regarding factor (b), the trial court found that defendant had not been motivated to move to Florida by a desire to frustrate or defeat the existing parenting-time schedule, noting that the parties had successfully effectuated plaintiff's parenting time without a court order "for the first

-11-

nine years of [AJC's] life," that defendant had offered to "keep the [parenting-time] intact and . . . pay for the travel," and that plaintiff, by his own admission, had only filed for a custody and parenting-time determination "so [defendant] wouldn't be able to move." In arguing that these findings were against the great weight of the evidence, plaintiff relies on the same argument presented for best-interests factor (j), MCL 722.23(j). As already discussed, the trial court's findings in that regard were not against the great weight of the evidence and, for the same reasons, we conclude that the evidence does not clearly preponderate in the opposite direction of the trial court's findings with regard to change-of-domicile factor (b). See *Stoudemire*, 344 Mich App at 42. We also note that, as previously mentioned, there was significant evidence indicating that defendant fostered AJC's relationship with plaintiff and only sought to move to Florida with AJC after she had received a job offer that would substantially improve her and AJC's quality of life. Additionally, defendant had suggested a new parenting-time schedule that included slightly more parenting-time days for plaintiff than the existing custody arrangement had included, albeit reorganized into fewer—but longer—periods of time. Defendant had also offered to pay for all travel expenses associated with AJC's trips to and from Florida for plaintiff's parenting time. And, by plaintiff's own admission, he did not believe that defendant was trying to hurt his relationship with AJC by moving to Florida. In light of this evidence, the trial court's finding under this factor was not against the great weight of the evidence. See *id*.

Regarding factor (c), the trial court found that defendant's proposed long-distance parenting-time schedule would adequately preserve and foster the parental relationships with AJC and acknowledged that, although the structure of plaintiff's parenting time would change because of the distance between plaintiff and AJC following the move, the overall amount of his parenting time would increase slightly. Plaintiff argues that this finding was against the great weight of the evidence because the trial court failed to account for the "burdensome impact" of the increased geographic distance between the parties. Plaintiff argues that because the distance between the parties would increase from approximately 50 miles to 1,370 miles, he will no longer enjoy the weekend parenting time that he had enjoyed under the parties' previous arrangement. "Implicit in factor (c)," however, "is an acknowledgement that weekly visitation is not practicable when parents are separated by state borders," and because equality between the old and the new visitation plan "is not possible" following a change of domicile, "[t]he new visitation plan only need provide a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent." *McKimmy v Melling*, 291 Mich App 577, 583; 805 NW2d 615 (2011) (quotation marks and citation omitted). As noted, the trial court acknowledged that the distance between the parties would require a reconfiguration of plaintiff's parenting-time schedule, but it nonetheless found that this reconfiguration "would not change the relationships that [AJC] knows." Plaintiff contends that the new visitation plan would "destroy" AJC's bond with him, but he fails to explain why this reconfiguration (which would provide him with more overall parenting time than he previously enjoyed) would necessarily do so, let alone why "the evidence clearly preponderates in the opposite direction" of the trial court's assessment. *Stoudemire*, 344 Mich App at 42 (quotation marks and citation omitted). The trial court found that the new parenting-time plan provided a realistic opportunity to preserve and foster the parental relationship previously enjoyed by plaintiff, the nonrelocating parent, and "[t]his Court has previously opined that perhaps extended periods of visitation will foster, not hinder, a closer parent-child relationship." *McKimmy*, 291 Mich App at 583 (quotation marks, citation, and alteration omitted). Plaintiff's argument also fails to consider "the use of modern technology," such as phone and video calls, which can alleviate "[t]he separation between a parent and a child." *Id*. We therefore cannot

-12-

conclude that the trial court's finding under this factor was against the great weight of the evidence. See *Stoudemire*, 344 Mich App at 42.

In sum, the trial court's findings under change-of-domicile factors (b) and (c) were not against the great weight of the evidence, and we find no merit in plaintiff's claims of error to that effect.

## VI. PARENTING TIME

Lastly, plaintiff argues that the trial court committed clear legal error by failing to award specific parenting time. We disagree.

Pursuant to MCL 722.27a(8), "[p]arenting time shall be granted in specific terms if requested by either party at any time." A party's motion for specific parenting time may be in writing or made orally at a hearing or trial. *Pickering v Pickering*, 268 Mich App 1, 6-7; 706 NW2d 835 (2005). Neither party in this case ever requested, either orally or in writing, that the trial court impose a specific parenting-time schedule. Although defendant provided the court with a proposed parenting-time schedule after the move to Florida, the record makes clear that defendant provided the proposed schedule to plaintiff *before* the parties initiated these proceedings and only offered it as evidence at the custody hearing to demonstrate her willingness and ability to foster AJC's parental relationship with plaintiff even after the move to Florida.

Regardless, the trial court ordered a sufficiently specific parenting-time schedule. A parenting-time schedule is "specific" if it is "explicitly set forth," "particular," or "definite." *Id*. at 6 (quotation marks, citation, and alteration omitted). " 'Reasonable and liberal parenting time' is plainly *not* a grant of parenting time in 'specific' terms." *Id*. The court ordered that plaintiff receive "at least 93 overnights per year" and that the parties' parenting-time schedule adhere to the "the 23rd Circuit Friend of the Court Guidelines." The parenting-time schedule established by these guidelines alternates holidays and major school breaks between the parties, evenly splits yearly summer breaks between the parties, and makes defendant, as the custodial parent, responsible for all of the transportation costs associated with parenting time. We fail to see how this award of parenting time lacks the requisite specificity, and reject plaintiff's claim of error to that effect.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani

-13-